CRESCENT FOUNDRY CO. PVT. LTD., Nandikeshwari Pvt. Ltd., Carnation Enterprises Pvt. Ltd., Kajaria Iron Castings Pvt. Ltd., Kejriwal Iron & Steel Works, Overseas Iron Foundry Pvt. Ltd., Raghunath Prasas Phoolchand Ltd., R.B. Agarwalla & Co., RSI India Pvt. Ltd., Serampore Industries Pvt. Ltd., Sitaram Madhogarhia & Soins Pvt. Ltd., Super Castings (India), Tirupati International (P) Ltd., UMA Iron & Steel Co., Plaintiffs,

v.

UNITED STATES, Defendant,

Alhambra Foundry Inc., Allegheny Foundry Co., Deeter Foundry Inc., East Jordan Iron Works, Inc., Lebaron Foundry Inc., Municipal Castings, Inc., Neenah Foundry Co., U.S. Foundry & Manufacturing Co., and Vulcan Foundry, Defendant–Intervenors.

Slip Op. 97–82.
Court No. 95–09–01239.

United States Court of
International Trade.

June 26, 1997.

Cameron & Hornbostel, Washington, DC (Dennis James, Jr.) for plaintiffs.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Velta A. Melnbrencis) and Robert E. Nielsen, Senior Counsel, Office of Chief Counsel for Import Administration, Department of Commerce, of counsel, Washington, DC, for defendant.

Collier, Shannon, Rill & Scott (Paul C. Rosenthal and Robin H. Gilbert), Washington, DC, for defendant–intervenors.

## MEMORANDUM OPINION

DiCARLO, Senior Judge.

This case concerns the 1990 administrative review of a countervailing duty order regarding iron metal castings from India. It was remanded: 1) to reconsider whether countervailing a tax deduction taken for countervailed Cash Compensatory Scheme (CCS) rebate payments double–counts the rebate subsidy, and 2) to recalculate the benefit received through § 80HHC of the Indian tax code after subtracting International Price Reimbursement Scheme (IPRS) payments for nonsubject merchandise from each company's taxable income. *Crescent Foundry v. United States*, 20 CIT ——, 951 F.Supp. 252 (1996). On remand, Commerce concluded that when a company receives a grant such as a CCS or IPRS payment, and then re-

ceives a tax exemption for that grant, it has received two separately countervailable benefits. This finding is sustained, and the calculation of the § 80HHC subsidy contained in Commerce's original *Final Determination* is also sustained.

## I.

■ Section 80HHC permits exporters to deduct profits derived from exports from their taxable income. *Certain Iron Metal Castings from India*, 60 Fed.Reg. 4,592, 4,594 (Dep't Comm.1995) (prelim.admin.review) [hereinafter *Prelim. Determination*]. Commerce found that § 80HHC was a countervailable subsidy. *Id.* CCS payments, which rebate certain indirect taxes and import duties, contributed to the taxable income deducted under § 80HHC. *Certain Iron Metal Castings from India*, 60 Fed. Reg. 44,849, 44,854 (Dep't Comm.1995) (final admin. review) [hereinafter *Final Determination*] Commerce found that some CCS payments were also countervailable. Plaintiffs argued that Commerce should not have countervailed the amount of the § 80HHC deduction attributable to those CCS payments, and that by doing so Commerce was double–counting the CCS subsidy. The key to the double–counting issue is whether the CCS payments and § 80HHC deductions constitute one subsidy or two. If they are two separate subsidies, conferring independent benefits at different times, then there is no double–counting when each benefit is countervailed.

Plaintiffs' argument that the programs conferred a single benefit paralleled Commerce's reasoning in *Carbon Steel Wire Rod from Argentina*, 47 Fed.Reg. 42,393 (Dep't Comm.1982) (suspension of investigation) and *Certain Welded Carbon Steel Pipe and Tube Products from Argentina*, 53 Fed.Reg. 37,-619, 37,627 (Dep't Comm.1988) (final aff. determination) [hereinafter *Argentine Cases*], in which the Department declined to countervail an income tax exemption for an indirect tax rebate scheme similar to India's CCS program. At oral argument and in briefs subsequently filed with the court, neither party was able to demonstrate whether Commerce had considered and rejected the *Ar-*

*gentine Cases* in its investigation, or whether the cases continued to reflect current policy. As the record was unclear, the court remanded the issue to Commerce for further explanation.

The *Final Results* indicate that Commerce found the programs conferred two separate benefits. (*Final Results of Redetermination on Remand: Crescent Foundry v. United States, Slip Op. 96–200* (Feb. 24, 1997) [hereinafter *Final Results].)* The benefit of the CCS program is the full amount of the countervailable payments received. *See Agreement on Interpretation and Application of Articles VI. XVI, and XXIII of the General Agreement on Tariffs and Trade (Relating to Subsidies and Countervailing Measures),* Apr. 12, 1979, Annex items (h–i), 31 U.S.T. 513, 546–47 [hereinafter *Illustrative List]; see also* 19 U.S.C. §§ 2502(1), 2503(c)(5) (1988) (incorporating *Illustrative List* into United States domestic law). The benefit of § 80HHC is the difference between the income tax actually paid and the tax that would have been paid absent the § 80HHC deduction. *Final Results* at 5; *Prelim. Determination* at 4,594. This benefit is also a clearly countervailable subsidy. *Illustrative List* item (e) (Countervailable subsidies include "[t]he full or partial exemption ... specifically related to exports, of direct taxes paid or payable by industrial or commercial enterprises.") Commerce found that these two benefits were separate and unrelated, and concluded that there were two subsidies, each countervailable. *Final Results* at 5. Since the statute specifically requires Commerce to countervail both types of subsidies, Commerce's decision to countervail them separately is not a violation of that statute.

█ The question on remand was whether Commerce had previously decided as a matter of policy to treat such instances as if there were only one benefit. The *Argentine Cases* suggested that it had, concluding that "[s]ince we have separately determined the full benefit from this overrebate, we would be double–counting if we were to consider that a countervailable benefit is conferred by its exemption from the income tax." *Carbon Steel Wire Rod from Argentina,* 47 Fed.Reg. at 42,395. If Commerce did have such a

policy, the department had an obligation to either follow that policy or to explain the reasons for its departure. *Hussey Copper. Ltd. v. United States,* 17 CIT 993, 997, 834 F.Supp. 413, 418 (1993); *Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1209, 704 F.Supp. 1075, 1088 (1988).

According to the *Final Results,* Commerce did not have such a policy. Commerce states that *"Argentine Wire Rod* must be considered an anomaly and not reflective of current Department policy or of Department policy in all of the case precedents[.]" *Final Results* at 4. It further explains that its usual procedure when exporters receive both a countervailable rebate and a tax exemption for that rebate is to calculate separate benefits and fully countervail both subsidies. *Id,* at 4–5. It appears that, on reflection, Commerce has determined that on this point the *Argentine Cases* were erroneously decided.

This conclusion is consistent with Commerce's treatment of countervailable tax exemptions in other determinations. There were investigations completed before the *Argentine Cases* in which Commerce countervailed both grant programs and tax exemptions without considering the effect of one upon the value of the other. *Lamb Meat from New Zealand,* 50 Fed.Reg. 37,708 (Dep't Comm.1985) (final aff. determination) (tax benefit based on exporter status); *Fresh Atlantic Groundfish from Canada,* 51 Fed. Reg. 10,041 (Dep't Comm.1986) (final aff. determination); *Oil Country Tubular Goods from Canada,* 51 Fed.Reg. 15,037 (Dep't Comm.1986) (final aff. determination) (tax benefits based on regional location). Commerce has also continued that practice in determinations completed subsequent to *Crescent Foundry. See, e.g., Certain Pasta from Turkey,* 61 Fed.Reg. 30,366 (Dep't Comm.1996) (final aff. determination) (tax benefit based on exporter status); *see also Certain Pasta from Italy,* 61 Fed.Reg. 30,288 (Dep't Comm.1996) (final aff. determination); *Fresh and Chilled Atlantic Salmon from Norway,* 56 Fed.Reg. 7,678 (Dep't Comm. 1991) (final aff. determination) (tax benefits based on regional location); *see also Certain Steel Products from Belgium,* 58 Fed.Reg. 37,273 (Dep't Comm.1993) (final aff. determi-

nation); *Extruded Rubber Thread from Malaysia,* 57 Fed.Reg. 38,472 (Dep't Comm. 1992) (final aff. determination) (export–related tax deductions).

■■■ Commerce has broad discretion to interpret its own policies, within the limits of its statutory authority. *Hussey Copper,* 17 CIT at 997, 834 F.Supp. at 418; *Citrosuco Paulista,* 12 CIT at 1209, 704 F.Supp. at 1088. Its repudiation of the reasoning in the *Argentine Cases* is consistent with past practice in other determinations, and is not in violation of the relevant statutory language. It is therefore within that discretion, *see Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 806–09, 93 S.Ct. 2367, 2374–76, 37 L.Ed.2d 350 (1973), and Commerce's decision not to subtract the amount of the § 80HHC deduction attributable to countervailed CCS payments from the § 80HHC subsidy is in accordance with law.

## II.

IPRS payments contributed to the taxable income deducted under § 80HHC, just as the CCS payments did. When disputing the amount of the benefit conferred by § 80HHC, plaintiffs argued that Commerce should not have countervailed the amount of the § 80HHC deduction attributable to those IPRS payments.

The IPRS program reimbursed exporters for the difference in price between higher–priced domestic pig iron and its foreign equivalent. *Final Determination* at 44,854. Commerce found that none of the plaintiffs had received IPRS payments for subject merchandise. *Prelim. Determination* at 4,595. On remand, the court ordered Commerce not to countervail the portion of the § 80HHC deduction attributable to IPRS payments, because the IPRS payments had not benefitted subject merchandise. *Crescent Foundry* at 26, 951 F.Supp. 252.

■■■ The court reasoned that if the IPRS payments and the § 80HHC deduction are treated as a single benefit, and the IPRS payments are tied to nonsubject merchandise, then that single benefit is not countervailable. If they constitute two independent benefits, however, then the countervailability of one does not depend on the countervailability of the other. In light of Commerce's decision to treat a grant and a tax exemption for that grant as two separate benefits, the court has reconsidered its holding and determined that Commerce's original calculation of the § 80HHC subsidy was in accordance with law.

There are two types of export subsidies, "tied" and "untied." A tied export subsidy benefits particular merchandise. If that merchandise is subject to a countervailing duty order, then the tied subsidy is countervailable. Commerce determines the subsidy rate by dividing the benefit received by the total exports of the merchandise to which the subsidy is tied. *Final Results* at 11 (citing *Notice of Proposed Rulemaking and Request for Public Comments: Countervailing Duties,* 54 Fed.Reg. 23,366, 23,374–75 (1989)). An untied export subsidy benefits all of a firm's exports, both subject and nonsubject merchandise. Commerce calculates the subsidy rate for an untied subsidy by dividing the benefit by the total of all exports, not merely those subject to the countervailing duty order. Id. The rate is thus "diluted" to reflect the fact that some of the benefit applied to nonsubject merchandise.

Commerce concluded that the § 80HHC deduction is an untied subsidy because its benefit is "broad-based and not 'tied' to a specific product or market." *Id.* at 13. While taxable income can be divided according to whether it was derived from subject or nonsubject merchandise, the benefit of a tax exemption for that income, namely a more profitable bottom line after taxes, cannot be apportioned by product line. As § 80HHC is an untied subsidy, Commerce should countervail it according to the standard formula for untied subsidies outlined in the *Proposed Rules.* *Id.* This was the formula used in Commerce's original calculation. *Prelim. Determination* at 4,594.

## CONCLUSION

Ordinarily, when the court rejects any portion of Commerce's remand results, it will order another remand and require Commerce to recalculate its findings again.

Here, however, based on Commerce's clarification of its policy, the court is ordering Commerce to revert to calculations that it has already completed. There is nothing further for Commerce to research or decide, and there is no need for the parties to submit additional information or arguments to the agency. Therefore, in the interests of judicial economy and conservation of the parties' resources, the court will enter a final judgment immediately rather than order a remand that should serve as a mere formality.

To that end, the portion of *Crescent Foundry* ordering recalculation of the benefit received through § 80HHC is vacated. As Commerce's original calculation of the § 80HHC subsidy is sustained, it is not necessary for the court to sustain either of the recalculation approaches presented in the *Final Results*. The remainder of the *Final Results* is sustained.